Luis Garratón Romaguera et al., peticionarios y recurrentes, *v.* Juan T. Peñagarícano, etc., demandado y recurrido.

*Número:* 79     *Resuelto:* 1ro. de mayo de 1963

*Víctor Gutiérrez Franqui, Federico Ramírez Ros y Carlos G. Látimer,* abogados de los recurrentes; *Víctor M. Marchand, Nieves Agostini de Torres, Miguel Franquis Ventura y José Iglesia la Cruz,* abogados del recurrido; *A. Castro Fernández y F. Castro Amy,* abogados del inquilino.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

PER CURIAM: Los recurrentes, dueños de un edificio de tres plantas sito en el número 352 de la Calle de la Fortaleza de esta Capital, tenían arrendados en 1 de octubre de 1942 tres locales comerciales en la primera planta del mismo con un área de ocupación de 2,208.86 pies cuadrados a Angélica Haddock, Manuel Pumares y la Winthrop Chemical Co., por cánones mensuales de $70, $80 y $37.00. Luego se reajustaron los cánones de los dos últimos locales, aumentándose a $96 y $46.25, respectivamente. El canon total percibido ascendía pues a $212.25. Posteriormente se hicieron obras de mejoras y reparaciones y se incluyó cierto espacio adicional de 1,399.30 pies cuadrados, de forma que el área arrendada en dicha primera planta era de 3,608.16 pies cuadrados.

En octubre de 1955 Telecentro Eléctrico, Inc., ocupó totalmente la primera planta mediante el pago de un canon de $500 mensuales, que satisfizo por un período de 16 meses, o sea hasta enero de 1957. En el mes de agosto siguiente la corporación arrendataria se querelló ante la Oficina de Estabilización Económica exponiendo que los recurrentes le estaban cobrando un sobreprecio. Después de practicada la investigación correspondiente y de celebrarse una vista administrativa con la comparecencia de los interesados, en 31 de julio de 1958 el Administrador remitió un aviso "sobre el alquiler que nos proponemos fijar" en el cual indicaba que conforme al Art. 6 de la Ley de Alquileres Razonables, 17 L.P.R.A. sec. 186, intentaba fijar un canon máximo de "$363.30 por mes, *prospectivo.* El alquiler incluye el servicio de agua, que será pagado por el casero. Local de 3,608.16

p/c," basándose en "que el alquiler actual es más alto que el de los locales similares para el 1ro. de octubre de 1942. Las mejoras han sido consideradas." No habiéndose formulado reparo alguno por los interesados, se emitió resolución en 12 de noviembre de 1958 fijando como canon máximo el indicado de $363.30.

En 26 de enero de 1959 se celebró una vista administrativa en relación con el sobreprecio y en 20 de abril se emitió un requerimiento de reembolso por la suma de $136.70 mensuales cobrada en exceso durante 16 meses, o sea un total de $2,187.20. Solicitada la reconsideración de esta actuación administrativa, el Administrador la confirmó mediante un nuevo requerimiento de fecha 17 de febrero de 1960, en el cual se dispuso además que el casero podría descontar del reembolso cualquier suma que dicho inquilino le adeudare, y que a la sazón era $2,906.40, correspondiente a ocho mensualidades. Se recurrió al Tribunal Superior, Sala de San Juan, que en una lacónica sentencia desestimó la petición de revisión presentada. Acordamos revisar esta sentencia y expedimos auto de *certiorari*.

■ El párrafo 8 del Art. 6 de la Ley de Alquileres Razonables, 17 L.P.R.A. sec. 186, dispone que:

"En los casos en que el Administrador ajuste el alquiler que se venía pagando antes de la fecha de vigencia de esta Ley, o dicte una orden final sobre cualquier alquiler, fijando en su lugar el alquiler razonable como aquí se determina, el inquilino sólo vendrá obligado a pagar el alquiler básico o el alquiler razonable, a ese efecto fijado; pero no tendrá derecho a reembolso o reclamación alguna por lo pagado en exceso del alquiler razonable con anterioridad a la fecha en que éste se fijare, salvo en los casos en que por disposición expresa de esta Ley el alquiler se ajustare automáticamente a la suma prevaleciente el primero de octubre de 1942, y salvo aquellos casos en que el Administrador dicte una orden provisional aumentando o fijando el alquiler máximo hasta que el caso se resuelva en definitiva; disponiéndose, que el alquiler así aumentado o fijado quedará sujeto a reembolso al inquilino

en cuanto a aquella cantidad que resultare en exceso del alquiler máximo que pudiere fijarse por la orden final."

Una simple lectura de esta disposición estatutaria demuestra que cuando el Administrador fija un alquiler razonable menor que el que el inquilino· ha venido pagando, éste no tiene derecho a ser reembolsado por lo satisfecho en exceso, a menos que a) el alquiler se hubiese ajustado, según la disposición expresa del estatuto, al canon prevaleciente en 1 de octubre de 1942, o sea, el canon básico; y, b) el Administrador hubiere dictado una orden provisional aumentando o fijando el alquiler máximo hasta que el caso sea resuelto en definitiva, pero este alquiler provisional queda sujeto a reembolso al inquilino en cuanto a aquella cantidad que resultare en exceso del canon que se fije mediante la orden final. *Peñagarícano, Admor.* v. *Tribl. Superior*, 81 D.P.R. 877, 882 (1960).

▬ En el presente caso el Administrador no dictó orden provisional alguna y, por tanto, el requerimiento de reembolso solamente puede justificarse si se sostiene que el mismo emana de un ajuste automático al canon básico.[1] La dificultad con esta posición reside en el hecho de que el supuesto canon básico prevaleciente en 1 de octubre de 1942 se refiere a un local fundamentalmente distinto al que ha dado margen a la alegación de sobreprecio. Dos circunstancias decisivas al respecto son el aumento considerable del área de ocupación—de 2,208.86 a 3,608.16 pies cuadrados—y la inversión de consideración hecha por los arrendadores en mejoras y reparaciones. Es por eso que el caso de *Peñagarícano, Admor.* v. *Tribunal Superior*, supra, es claramente distinguible, pues allí se trataba de exactamente los mismos locales de vivienda que estaban arrendados desde antes de la fecha de congela-

---

[1] Para un recuento de la legislación sobre la facultad del Administrador para la fijación de cánones de arrendamiento desde la aprobación de la Ley de Alquileres Razonables, véase *Mejías* v. *Tribl. Superior*, 82 D.P.R. 562 (1961). Cf. *Mejías, Admor.* v. *Tribunal Superior*, 82 D.P.R. 733 (1961).

ción de los alquileres. Además, un examen del expediente de la propia agencia administrativa revela que en la fijación del canon de $363.30 no se tomó como punto de partida el alquiler que se devengaba por la parte del local que estaba arrendada en octubre de 1942, y que en todo momento se consideró el caso como uno en el cual la intervención del Administrador se derivaba de su facultad para establecer un canon razonable. Así, en el informe del examinador de fecha 21 de marzo de 1958 se omite toda información relacionada con el alquiler básico, y se recomienda un canon a base de 10¢ por pie cuadrado de área, que por 3,608.16 pies cuadrados arroja un resultado de $360.82, cantidad que sumada a un estimado de $2.50 para cubrir el gasto promedio de consumo de agua, se traduce en el canon de $363.30 que finalmente se fijó. En este informe hay otro detalle significativo que merece mención. Es la explicación al efecto de que "aunque la fluctuación de rentas . . . indica .08107 como el valor por p/c más alto, se recomienda el comparable más alto, 10¢ por p/c, por las mejoras habidas efectuadas en el comparado." No creemos que sea necesario añadir más para sostener que en el presente caso no se trata de ninguna de las dos situaciones que reconocen al inquilino el derecho a reclamar reembolso tras la fijación por el Administrador de un canon razonable.

*Se revocará la sentencia del Tribunal Superior, Sala de San Juan, de fecha 2 de febrero de 1961, y se dictará sentencia anulando la orden de reembolso emitida en 17 de febrero de 1960 por el Administrador de Estabilización Económica en el caso VPC-2248.*